## 37745. BULLOCK v. CITY OF DALLAS.

MARSHALL, Justice.

The appellant was convicted in the Recorder's Court for the City of Dallas, Georgia, of the offense of loitering, in violation of city ordinance § 5-112 (a): "No person shall remain or loiter upon any premises to which the public has access, including but not limited to such places as business and shopping area parking lots, where the person's presence upon such premises is unrelated to the normal activity, use or business for which such premises are made available

to the public."

The evidence, briefly, was that the appellant, after getting gasoline for her car at a filling station, stopped in the parking lot of an adjacent vehicle and tire maintenance business (which was not open for business at the time) at the request of her passenger, who saw some friends in another car. The young people chatted with each other concerning a party that was to take place later that evening. The evidence was in conflict as to how long they remained there with their cars' engines still running; the appellant and the others involved testified that it was a minute or a minute and a half, whereas the arresting officer testified that he had timed it at five minutes. There was no evidence of any criminal behavior other than the alleged loitering.

The appellant argued in recorder's court that the ordinance is unconstitutional because it is unreasonable, vague and overbroad. After her conviction, she filed exceptions alleging these grounds and attacking the conviction as being contrary to the law and the evidence. On certiorari to the superior court, the conviction was affirmed. We granted the appellant's application for discretionary appeal. Code Ann. § 6-701.1 (a) (1) (Ga. L. 1979, pp. 619, 620). *Held:*

1. The anachronistic laws condemning loitering, like vagrancy statutes, are throwbacks to feudal England. See Lacey, Vagrancy and other Crimes of Personal Condition, 66 Harvard L. Rev. 1203. "The conditions which spawned these laws may be gone, but the archaic classifications remain." Papachristou v. City of Jacksonville, 405 U. S. 156, 162 (92 SC 839, 31 LE2d 110) (1972).

The ordinance in question, although patently in contravention of the First and Fourteenth Amendments to the United States Constitution (see Divisions 2, 3 and 4, post), is fatally defective for the reason that it is so capricious, arbitrary and unreasonable as to be void. This court has long recognized that a municipal ordinance may be declared void for unreasonableness without declaring it un-constitutional. *Richardson v. Coker,* 188 Ga. 170 (2) (3 SE2d 636) (1939). This principle was applied in *Soles v. City of Vidalia,* 92 Ga. App. 839 (2) (90 SE2d 249) (1955): "The ordinance for the violation of which the [appellant] was convicted — making it unlawful for any person to idle, loiter or loaf on the streets, sidewalks, alleys, lanes, parks, or squares of the City of Vidalia or in any public building therein, and which makes no exception for persons thus engaged who are in no way interfering with the rights of others, who are guilty of no disorderly or obnoxious conduct, and who are engaged in no conduct resulting in impeding traffic, the congregation of persons resulting in obstruction thereof, or other such conduct that may reasonably be

regulated by a municipality under its police powers — is void for unreasonableness."

The inherent unreasonableness of the all-encompassing Dallas ordinance is clearly seen in its application in the case at bar. It cannot be gainsaid that the appellant committed no unlawful act or interfered with any rights of others. She merely sat in her legally parked vehicle in the parking lot of a business which was closed for the day, for a maximum of five minutes, and listened to her passenger carry on a brief, lawful conversation with the occupant of another vehicle whom they had chanced to meet. An ordinance which makes criminal such perfectly normal, acceptable, lawful, innocent and innocuous behavior, is an affront to justice and a total aberration from our concept of ordered liberties.

The city argues that the ordinance is necessary and reasonable to protect the right of the property owner or businessman who makes his parking lot available to the public in connection with the operation of his business, to use his property as he sees fit. However, the section of the ordinance in question makes no reference to interference with the property owner's use of the premises, but facially would prohibit the presence of those like the appellant, who are present after business hours, when no interference with the normal use of the property would occur. In this connection, we note that subsection (h) of § 5-112 of the ordinance addresses this type of problem by providing, "No person shall congregate with another or others in or on any public way or place so as to halt or impede the flow of vehicular or pedestrian traffic after having been directed to clear such public way or place when ordered by the City police."

2. The ordinance in question is constitutionally infirm due to its vagueness.

"No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." Lanzetta v. New Jersey, 306 U. S. 451, 453 (59 SC 618, 647, 83 LE 888) (1939). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Connally v. General Const. Co., 269 U. S. 385, 391 (46 SC 126, 70 LE 322) (1926). "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis . . ." Grayned v. City of Rockford, 408 U. S. 104, 108 (92 SC 2294, 33 LE2d 222) (1972). Under our demo-cratic system of government, lawmaking is not entrusted to the

moment-to-moment opinions of a policeman on his beat. To let a policeman's command become equivalent to a criminal statute comes dangerously close to making our government one of men rather than laws. See Shuttlesworth v. City of Birmingham, 382 U. S. 87, 90 (86 SC 211, 15 LE2d 176) (1965). Vagrancy-loitering ordinances, as carryovers from the feudal ages, tend to be inherently vague so as to allow law enforcement officials to throw as large a net as possible to rid the public of undesirables. However, "[t]o the extent the statute can be interpreted to support dragnet, street-sweeping operations absent probable cause of actual criminality, it conflicts with established notions of due process." U. S. ex rel. Newsome v. Malcolm, 492 F2d 1166, 1173 (2nd Cir. 1974).

Perhaps the leading case in this area is Papachristou v. City of Jacksonville, 405 U. S. 156, supra, in which the Supreme Court reversed the convictions of eight defendants for vagrancy and loitering due to the vagueness of the city ordinance, "in that it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' it encourages arbitrary and erratic arrests and convictions, it makes criminal activities that by modern standards are normally innocent, and it places almost unfettered discretion in the hands of the police."

The ordinance in question must fail for the same reasons, being replete with vagueness, ambiguity and uncertainty. Broken into its component parts, it declares:

(a) *"No person . . ."* — Literally applied, this would include the property owner himself, if his presence is not related to a normal purpose for which the premises are available to the public, and also one who had express authority to be on the premises.

(b) *". . . shall remain or loiter . . ."* — Without any guidelines, any citizen who desired to conform his conduct to this provision would be unable to discern whether he risked criminal responsibility for pausing momentarily in a parking lot during an early morning jog, or in changing a tire which has gone flat while shopping in a store, or "by seeking shelter from the elements in the doorway of a building." Newsome v. Malcolm, 492 F2d 1166, supra, p. 1173. Furthermore, with no specified time for the violation, criminal liability may arise from a pause of 15 seconds, one to five minutes (as here), 15 minutes, or 5 hours — apparently totally within the discretion of the police officer.

(c) *". . . upon any premises to which the public has access, including but not limited to such places as business and shopping area parking lots . . ."* — The use of "any" and "but not limited to" seem calculated to give the most expansive application possible. It is clear that all public property is covered by this ordinance, including

streets, alleys and parks. It is also clear that certain private property is also included. What is not clear is whether all private property is included or only private property which has a business operated on it, and to what "premises" the public has "access."

(d) *". . . where the person's presence upon such premises is unrelated to the normal activity, use or business for which such premises are made available to the public."* — Literally applied, this might bar the presence of the property owner himself; a person who has suffered a sudden injury or illness while on the premises; cake sales or kite-flying contests, etc.; or a child retrieving his baseball from a parking lot, who paused briefly to observe a beautiful sunset. In the present case, the arresting officer himself testified that the activity for which the appellant was arrested is common and not abnormal.

"[A] criminal statute perishes on constitutional grounds when it leaves speculative the tests for ascertaining the line separating guilty from innocent acts." Ricks v. District of Columbia, 414 F2d 1097, 1101 (D. C. Cir. 1968). In Ruff v. Marshall, 438 FSupp. 303 (M. D. Ga. 1977), the district court found the loitering ordinance of Eatonton constitutionally lacking. "The loitering ordinance prohibits parking, driving, loitering or congregating upon '. . . any public place of business, service station, store, warehouse, bus depot, railway station, or other premises of another, after the close of business.' In context, the term 'other premises of another' is unconstitutionally vague as it is unclear whether all private property of another is included or whether only that private property of another is included which has a public business operated upon it." Ibid., p. 306. The City of Dallas ordinance in question is even more imprecise and uncertain than the Eatonton ordinance.

In Government of the Canal Zone v. Castillo, 568 F2d 405 (5th Cir. 1978), relied upon by the trial court, the vagrancy statute upheld had two elements: (1) that the defendant be found within or loitering about a building, structure, vessel, railroad car, or storage yard, and (2) that he have no authority or permission to be in such locations. The appellate court reasoned: "The terms 'found within' and 'loitering' are still troublesome in their vagueness and potentially broad, unpredictable application. However, we find that the second element of the offense under the statute adds sufficient specificity to satisfy the Constitution . . . This language [the second element] is free from the defects that appellate courts have found in clauses similarly designed to narrow the scope of vagrancy and loitering ordinances." Ibid., p. 410. The statute upheld in Castillo is distinguishable from the Dallas ordinance, under which a conviction could be obtained even if prior permission had been obtained by the owner or occupier

of the property.

3. The ordinance in question is also constitutionally infirm in that it is overbroad in contravention of the First and Fourteenth Amendments to the United States Constitution. The doctrine of overbreadth is closely associated with the doctrine of vagueness, discussed hereinabove, and protects citizens from an otherwise valid statute which extends the state criminal authority beyond the proper reach of government into a constitutionally protected area. Zwickler v. Koota, 389 U. S. 241 (88 SC 391, 19 LE2d 444) (1967); NAACP v. Alabama, 377 U. S. 288 (84 SC 1302, 12 LE2d 325) (1964); Grayned v. City of Rockford, 408 U. S. 104, supra, pp. 114-115.

In Ruff v. Marshall, 438 FSupp. 303, supra, p. 306, the court held: "[W]hen state statutes or ordinances tend to burden or infringe fundamental individual rights, the state must tailor its statute so as to accomplish its goals with a minimal interference with individual liberties. The Eatonton loitering ordinance . . . does not except those present upon the property by invitation of the owners of the property. Clearly, Eatonton has no interest in including invitees within the ordinance's proscriptions. Therefore, the ordinance is overbroad."

In the case at bar, it is undisputed that the appellant was merely enjoying her rights of freedom of association, freedom of speech, and freedom of travel, all as guaranteed by the First Amendment. While it does not appear that she had the express permission or invitation of the property owner to stop momentarily on his premises as an invitee, she might have had at least the status of a licensee, by reason of the harmless nature of her brief stay and/or "by long standing custom and habit of which the owner is aware and to which the owner has not objected." Ruff v. Marshall, supra, p. 306 (7).

We note that our General Assembly has recently enacted a statute prohibiting "Loitering or prowling." Code Ann. § 26-2616 (Ga. L. 1980, pp. 388, 389).[1] While this statute is not material in the determination of the present case, and while we are not here called upon to rule upon its constitutionality, we do note that it contains a description of the offense and safeguards for its enforcement which address the constitutional issues which we have discussed hereinabove.

---

[1] "(a) A person commits the offense of loitering or prowling when one is in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

"(b) Among the circumstances which may be considered in determining whether such alarm is warranted is the fact that the person takes flight upon the appearance of a law enforcement officer, refuses to identify himself, or manifestly endeavors to

4. Finally, even if the ordinance be deemed not subject to the constitutional infirmities, so that it constituted a valid exercise of police power, the conviction based on the alleged violation thereof is subject to being set aside on the ground that it is not authorized by the evidence, as we have set out hereinabove. "Just as 'Conviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt." Thompson v. City of Louisville, 362 U. S. 199, 206 (80 SC 624, 4 LE2d 654) (1960).

*Judgment reversed. Jordan, C. J., Clarke, Smith and Gregory, JJ., concur. Hill, P. J., concurs in the judgment only.*

DECIDED SEPTEMBER 17, 1981.

*Howe & Sutton, Timothy A. McCreary,* for appellant.
*Lane & Sanders, Thomas C. Sanders,* for appellee.

conceal himself or any object. Unless flight by the person or other circumstances makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer failed to comply with the foregoing procedure, or if it appears at trial that the explanation given by the person was true and, would have dispelled the alarm or immediate concern.

"(c) A person committing the offense of loitering or prowling shall be guilty of a misdemeanor and upon conviction shall be punished as for a misdemeanor.

"(d) This section shall not be deemed or construed to affect or limit the powers of counties or municipal corporations to adopt ordinances or resolutions prohibiting loitering or prowling within their respective limits."