## S00A0134. JOHNSON v. ATHENS-CLARKE COUNTY.
(529 SE2d 613)

BENHAM, Chief Justice.

Tyson Johnson was arrested for a violation of Athens-Clarke County Municipal Ordinance § 3-5-23, Loitering or Prowling.[1] The arresting officer had observed Johnson at the same intersection four previous times over a two-day period, having told Johnson to move along twice the previous day and twice the day of the arrest, the last time 45 minutes before the arrest. Johnson departed each time as directed, but returned and was sitting on a wall at the intersection when the officer approached the fifth time. Asked whether he was visiting anyone, Johnson said he was not, and admitted he lived a mile away. When asked why he was there, Johnson asked why the officer was harassing him, whereupon he was arrested. The officer testified in municipal court that the location of the arrest was a known drug area and that he believed Johnson was involved in illegal drug activity because he came back to the same location, behavior the officer testified was characteristic of illegal drug activity. No evidence of drug-related activity was found. Johnson was found guilty and filed a petition for certiorari to superior court. After a hearing, the superior court affirmed the sentence imposed by the municipal court. Johnson contends on appeal, as he did below, that Athens-Clarke County Municipal Ordinance § 3-5-23 is unconstitutional for, among other reasons, vagueness.

---

[1] Sec. 3-5-23 Loitering or prowling.

(a) A person commits the offense of loitering or prowling when he is in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity or under circumstances which cause a justifiable and reasonable alarm or immediate concern that such person is involved in unlawful drug activity.

(b) Among the circumstances which may be considered in determining whether alarm is warranted is the fact that the person takes flight upon the appearance of a law enforcement officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the person or other circumstances make it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this Code section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this Code section if the law enforcement officer failed to comply with the foregoing procedure or if it appears at trial that the explanation given by the person was true and would have dispelled the alarm or immediate concern.

1. Athens-Clarke County contends that this case is controlled by *State v. Burch*, 264 Ga. 231 (443 SE2d 483) (1994), and *Bell v. State*, 252 Ga. 267 (313 SE2d 678) (1984), in both of which OCGA § 16-11-36, Georgia's loitering statute was upheld against vagueness challenges. Although the ordinance in question is almost identical to the statute, the difference between the two is crucial in the context of this case. In the ordinance, subsection (a) is extended by addition of the final clause, "or under circumstances which cause a justifiable and reasonable alarm or immediate concern that such person is involved in unlawful drug activity." The difference is crucial because "a constitutional attack to a statute on a vagueness ground that does not involve a First Amendment challenge must be decided on the particular facts of each case." *State v. Boyer*, 270 Ga. 701 (1) (512 SE2d 605) (1999). Under the particular facts of this case, it was the additional portion of the ordinance upon which Johnson was arrested, charged, and convicted. Thus, our consideration is appropriately directed at that additional language of the ordinance, rendering *Burch* and *Bell* inapposite.

2. "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement. [Cit.]" *City of Chicago v. Morales*, 527 U. S. 41, 55 (119 SC 1849, 144 LE2d 67) (1999). We will address first the question of whether the ordinance gives sufficient notice of what conduct is forbidden.

> "[T]he principle that due process requires that criminal statutes give sufficient warning to enable (individuals) to conform their conduct to avoid that which is forbidden is one of the great bulwarks of constitutional liberty." [Cit.] This Court and the United States Supreme Court have consistently equated the "sufficient warning" of prohibited conduct required of criminal statutes to the provision of "fair notice" that by engaging in such conduct, one will be held criminally responsible. [Cit.] . . . [T]he Due Process Clause requires that the law give a person of ordinary intelligence fair warning that her specific contemplated conduct is forbidden, so that she may conduct herself accordingly. [Cit.] "All persons are entitled to be informed as to what the State commands or forbids." [Cit.]

*Hall v. State*, 268 Ga. 89, 92 (485 SE2d 755) (1997). Since, as noted above, this case must be decided on its facts, the question here is whether the ordinance in question provided sufficient notice, under

the circumstances of this case, that a person in Johnson's situation would know whether his conduct was criminal.

In *Satterfield v. State*, 260 Ga. 427 (395 SE2d 816) (1990), Satterfield was convicted of indecent or disorderly conduct (OCGA § 16-11-39 (3)) based on an accusation that he violated the statute " 'by massaging his groin with both hands and gyrating his hips in a sexual manner in the presence of (a police) investigator' in a public place." This Court found the statute void for vagueness because it "fails to define in any manner what is meant by indecent or disorderly conduct, [and thus] does not provide fair warning to persons of ordinary intelligence as to what it prohibits so that they may act accordingly." Id. at 428. Similarly, in *City of Chicago v. Morales*, supra, Chicago's anti-gang loitering ordinance was found to be too vague because innocent persons might "unwittingly engage in forbidden loitering if they happened to engage in idle conversation with a gang member." 119 SC at 1862. By contrast with the legislative enactments in *Satterfield* and *Morales*, the ordinance reviewed in *Lambert v. City of Atlanta*, 242 Ga. 645, 646 (250 SE2d 456) (1978), was held not subject to a vagueness challenge "since it details specific, prohibited conduct in language that is sufficiently definite to give a person of ordinary intelligence fair notice of what conduct is forbidden. . . ."[2]

The ordinance in the present case, however, is afflicted with the same defect as the statute in *Satterfield* and the ordinance in *Morales*: an innocent person unfamiliar with the drug culture could stand or sit in a "known drug area" without knowing the area had such a designation, and could return to the area for a legitimate reason, or for no reason at all, and, as the facts of this case show, be subject to arrest and conviction. However, there is nothing in the ordinance's language that would put such an innocent person on notice that such behavior was forbidden. In upholding the Georgia loitering statute, this Court noted in *Bell*, supra, that "the conduct sought to

---

[2] The ordinance at issue in *Lambert* provides in relevant part:

"It shall be unlawful for any person to loiter in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution or sodomy. Among the circumstances which may be considered in determining whether such purpose is manifested are: that such person is a known prostitute, pimp, or sodomist, repeatedly beckons to, stops or attempts to stop, or engages passers-by in conversation, or repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms or any bodily gesture. No arrest shall be made for a violation of this subsection unless the arresting officer first affords such person an opportunity to explain such conduct, and no one shall be convicted of violating this subsection if it appears at trial that the explanation given was true and disclosed a lawful purpose."
*Lambert*, supra at 645.

be prohibited is only that loitering which creates a danger to persons or property. 'As a threshold matter, the section requires at least some manifestation of aberrant behavior [and] the circumstances must be such that this behavior warrants alarm for the safety of persons or property in the vicinity.' [Cit.]" Id. at 270. Given that interpretation, this Court found the statute to give sufficient notice of the conduct to be avoided. The additional language in the ordinance in question, however, is not susceptible of such a rehabilitative interpretation. While we assumed in *Bell* that persons of average intelligence would understand what conduct creates a reasonable alarm or immediate concern for the safety of persons or property in the vicinity, we cannot so readily assume that a person of average intelligence will be sufficiently aware of which locations are "known drug areas" and what innocent-seeming conduct will seem to be drug-related in the opinion of a police officer. In the present case, the arresting officer's testimony that the place he arrested Johnson was a known drug area and that Johnson's conduct in returning to the same spot repeatedly was characteristic of drug related activities was based on the officer's law enforcement experience in that area, not on the general knowledge and common experience of a person of ordinary intelligence.

We conclude, therefore, that the language in the ordinance on which Johnson's arrest and conviction were based "does not provide fair warning to persons of ordinary intelligence as to what it prohibits so that they may act accordingly. We therefore hold that the [ordinance] is too vague to justify the imposition of criminal punishment for its violation." *Satterfield,* supra at 428.

3. As noted above, the other way in which vagueness may infect a criminal statute or ordinance is that "it may authorize and even encourage arbitrary and discriminatory enforcement." *Morales,* supra.

> "(I)f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis. . . ." [Cit.] Under our democratic system of government, lawmaking is not entrusted to the moment-to-moment opinions of a policeman on his beat. . . . Vagrancy-loitering ordinances, as carryovers from the feudal ages, tend to be inherently vague so as to allow law enforcement officials to throw as large a net as possible to rid the public of undesirables. However, "(t)o the extent the statute can be interpreted to support dragnet, street-sweeping operations absent probable cause of actual criminality, it conflicts with established notions of due process." [Cit.]

*Bullock v. City of Dallas*, 248 Ga. 164 (281 SE2d 613) (1981).

In *Morales*, the U. S. Supreme Court found that the anti-gang loitering ordinance left too much discretion to police officers to decide whether a person was a gang member or was in the presence of a gang member, and whether such a person was loitering. The ordinance involved in this case is likewise devoid of the necessary guidance to law enforcement officers. There are no overt acts necessary to trigger criminal liability under the statute, and no specific guidelines to inform law enforcement officers of what behavior might legitimately bring the officer to believe a person was "involved in unlawful drug activity." The scope of those words is so broad that it permits speculation in every case whether particular conduct constitutes "unlawful drug activity" and whether any person is "involved" in such illegal activity. Again, *Lambert*, supra at 646, provides a useful contrast in that the specificity of the ordinance at issue there gave "to the police explicit standards, thereby avoiding the dangers of arbitrary and discriminatory enforcement."

" '(A) criminal statute perishes on constitutional grounds when it leaves speculative the tests for ascertaining the line separating guilty from innocent acts.' [Cit.]" *Bullock*, supra at 168. As noted above, the "drug activity" portion of the Athens-Clarke County ordinance at issue permits and encourages such speculation, giving it the same fatal flaw explained in *Bullock*. The ordinance is, therefore, void for vagueness on that ground also.

As was the case in *Morales*, "in this instance the city has enacted an ordinance that affords too much discretion to the police and too little notice to citizens who wish to use the public streets." 119 SC at 1863. Accordingly, Johnson's conviction must be reversed.

*Judgment reversed. All the Justices concur.*

CARLEY, Justice, concurring.

I am compelled to join in the reversal of the judgment in this case because I agree that the additional language in the city's loitering ordinance distinguishes it from that which we upheld against constitutional attacks in *State v. Burch*, 264 Ga. 231 (443 SE2d 483) (1994) and *Bell v. State*, 252 Ga. 267 (313 SE2d 678) (1984). As the majority correctly holds, those "circumstances which cause a justifiable and reasonable alarm or immediate concern that such person is involved in unlawful drug activity" sets an unconstitutionally vague standard, as it fails to "provide fair warning to persons of ordinary intelligence as to what it prohibits so that they may act accordingly." *Satterfield v. State*, 260 Ga. 427, 428 (395 SE2d 816) (1990). Compare *State v. Burch*, supra; *Bell v. State*, supra. Furthermore, as the majority properly notes, the relevant portion of the ordinance is also void for vagueness because it allows the arresting officer to exercise such

unguided discretion as to create an unacceptably subjective test " 'for ascertaining the line separating guilty from innocent acts.' [Cit.]" *Bullock v. City of Dallas*, 248 Ga. 164, 168 (2) (281 SE2d 613) (1981). Compare *State v. Burch*, supra; *Bell v. State*, supra.

DECIDED MAY 8, 2000.

*Paul J. Vignos, Arthur T. Crosby III*, for appellant.

*Kenneth W. Mauldin, Solicitor, Todd A. Brooks, Assistant Solicitor*, for appellee.