321 Ga. 402
FINAL COPY

S25A0055. METZ v. THE STATE.

BETHEL, Justice.

George Metz traveled to the Paulding County Residential Substance Abuse Treatment Facility (the "Facility") to film its operation for publication on his YouTube channel. After approaching and then crossing the Facility's demarcated guard line, Metz refused orders from both Facility guards and, subsequently, Paulding County Sheriff's deputies to exit the property. As a result, Metz was arrested and charged with loitering near inmates in violation of OCGA § 42-5-17, as well as obstructing an officer.[1] Prior to trial, Metz filed a general demurrer seeking to bar his prosecution on the basis that, as applied to him, OCGA § 42-5-17 is unconstitutionally void for vagueness in violation of the right to due

_____

[1] The entirety of the exchange between Metz and the law enforcement officers was captured on Metz's audio-video recording, which was admitted into evidence and published to the jury.

process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. The trial court rejected Metz's challenge to the statute's constitutionality and, as such, denied Metz's demurrer. A jury found Metz guilty on both counts, and the trial court denied Metz's timely motion for new trial. Metz now appeals, contending that the trial court erred by rejecting his as-applied challenge to OCGA § 42-5-17 and his request to instruct the jury on the exercise of First Amendment rights as a defense to the charges.[2] For the reasons that follow, we affirm.

1. We turn first to Metz's as-applied challenge to the constitutionality of OCGA § 42-5-17.[3] The constitutionality of a statute presents a question of law that we review de novo. See *State v. Holland*, 308 Ga. 412, 414 (1) (841 SE2d 723) (2020). It is

---

[2] This case was docketed to the term of this Court beginning in December 2024 and submitted for a decision on the briefs.

[3] Metz raised only an as-applied challenge to OCGA § 42-5-17 and did not challenge its facial constitutionality. See *Bello v. State*, 300 Ga. 682, 686 (1) (797 SE2d 882) (2017) ("An as-applied challenge addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party," whereas a facial challenge requires showing "that no set of circumstances exists under which the statute would be valid, i.e., that the law is unconstitutional in all of its applications, or at least that the statute lacks a plainly legitimate sweep." (citations and punctuation omitted)).

axiomatic that "all presumptions are in favor of the constitutionality of a statute[.]" *Ga. Dept. of Human Svcs. v. Steiner*, 303 Ga. 890, 894-895 (II) (815 SE2d 883) (2018). "[B]efore an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and this Court must be clearly satisfied of its unconstitutionality." Id. at 894 (II) (citation and punctuation omitted). And because a statute is presumed valid, "the burden is on the party claiming that the law is unconstitutional to prove it." Id. at 895 (II).

The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" To satisfy due process, the challenged statute must both "give a person of ordinary intelligence fair warning that specific conduct is forbidden or mandated" and "provide sufficient specificity so as not to encourage arbitrary and discriminatory enforcement." *Smallwood v. State*, 310 Ga. 445, 447 (2) (851 SE2d 595) (2020) (citation and punctuation omitted). Because "[v]ague laws without clear enforcement criteria can result

3

in unfair, discriminatory enforcement," a statute "that fail[s] to provide clear warning to the average citizen of what conduct is criminally forbidden or fail[s] to provide explicit standards for its enforcement to law enforcement officers" will be invalidated as unconstitutionally vague. Id. (citation and punctuation omitted).

At issue in this case is OCGA § 42-5-17, which provides that "[i]t shall be unlawful for any person to loaf, linger, or stand around where inmates are employed or kept after having been ordered by the warden, superintendent, or designated representative in charge of the inmates to desist therefrom." Pointing to defects he perceives in the statutory text, Metz argues that the statute fails to articulate either the fair warning or standards for enforcement necessary to pass constitutional muster as applied to him. We address — and reject — each of these arguments in turn.

(a) Metz first argues that OCGA § 42-5-17 is insufficiently definite in its terms and that it deprived him of the requisite fair warning that his conduct was prohibited. To that end, Metz argues that the statutory language did not provide him notice by which to

4

determine what behavior constituted a failure to "desist" from "loaf[ing], linger[ing], or stand[ing] around" or to ascertain the precise boundaries of a location "where inmates are . . . kept." We are not persuaded.

"It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual criminally responsible for conduct which he could not *reasonably understand* to be proscribed." *Rose v. Locke*, 423 U. S. 48, 49 (96 SCt 243, 46 LE2d 185) (1975) (citation and punctuation omitted; emphasis supplied). We assess "the purported vagueness of a statute in light of the facts of the particular case—i.e., as applied— rather than in the abstract." *United States v. Cook*, 970 F3d 866, 873 (II) (A) (7th Cir. 2020). So, to succeed on his as-applied challenge in this context, Metz must demonstrate "that the statute is vague as applied to his particular conduct." *Smallwood*, 310 Ga. at 449 (2) (citation and punctuation omitted).

First, we look to Metz's argument that the statutory phrase "where inmates are . . . kept" did not provide him notice by which to

5

ascertain the precise boundaries of a location "where inmates are . . . kept." Of course, the relevant inquiry is not whether Metz had actual notice, but whether a person in Metz's place would "reasonably understand" that inmates are kept within the guard line of correctional institutions. See *Rose*, 423 U. S. at 49 (citation and punctuation omitted). As individuals enter the parking lot at the Facility, there is a warning sign notifying them that they are "entering the guard line[.]" This sign specifically references inmates, providing that it shall be unlawful for any person to give contraband to an inmate at the Facility. As such, we have little trouble concluding that a person in Metz's place would reasonably understand that inmates are kept within the demarcated guard line of the Facility.

Next, we look to Metz's argument that the statutory language did not provide him notice by which to determine what behavior constituted a failure to "desist" from "loaf[ing], linger[ing], or stand[ing] around." Though we have not previously defined the terms "loaf," "linger," or "stand around," they are terms of common

6

parlance, and as even Metz himself acknowledges, these words have commonly understood meanings — meanings that have remained consistent since the statute's enactment in 1903. See *Hosp. Auth. of Wayne County v. AmerisourceBergen Drug Corp.*, 317 Ga. 182, 184 (1) (891 SE2d 786) (2023) ("When looking for the commonly understood meaning of a word in statutory text, we generally look to dictionaries . . . from the time the statute was passed." (citation and punctuation omitted)). Around the time of enactment, to "stand"[4] was defined as to "cease to move" or to "be at rest or fixed." New Websterian 1912 Dictionary. "Desist" was defined as to "stop" or "forbear." Webster's New Standard Dictionary of the English Language (Students' Graded School ed. 1905); The American Dictionary of the English Language (1899). Here, the record shows

---

[4] The prosecution specifically focused on the word "stand" to prove Metz violated the statute. Given that the jury was authorized to find Metz guilty if it found that he loafed, lingered, *or* stood around since any of these three terms is by itself sufficient to violate the statute, we too focus our original meaning analysis on the word "stand" as it was defined around the time of enactment. See *Walton Elec. Membership Corp. v. Ga. Power Co.*, 320 Ga. 740, 750 (2) (a) (911 SE2d 559) (2025) ("We have long observed that the word 'or' is generally used in a disjunctive sense to signal alternatives." (citation and punctuation omitted)).

that, once Metz approached the perimeter barbed wire fence and the Facility's entrance gate, an officer asked Metz if he needed help, as the officer was trying to ascertain whether Metz had permission to be on the property. Metz indicated that he did not. At that point, the officer ordered Metz to "exit the property," informing him that he had crossed the guard line, but Metz refused to leave. The officer repeatedly ordered Metz to leave, and Metz's continued refusal prompted the officer to request assistance from the Paulding County Sheriff's Office. Once the Sheriff's deputy arrived, he also ordered Metz to depart, but Metz continued to refuse and was arrested. Thus, the record shows that Metz received several warnings from law enforcement that he was on State property at a correctional institution and was ordered to "stop" standing in the guard line and depart. However, Metz "cease[d] to move." Though Metz frames these statutory words as vague, it appears the deficiency Metz emphasizes with respect to the statute's use of these readily understood terms is not so much difficulty in ascertaining meaning, but in determining whether his actions in fact constituted a refusal

8

to "desist" from "stand[ing] around." In other words, what Metz really argues is that the evidence in his case was not sufficient to convict him of "stand[ing] around" after receiving an order to "desist" based on the definitions of these words. However, the problem this "poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *United States v. Williams*, 553 U. S. 285, 305-306 (III) (128 SCt 1830, 170 LE2d 650) (2008) ("[T]he mere fact that close cases can be envisioned" does not "render[ ] a statute vague. . . . Close cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt. What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."). Applying the doctrine of vagueness, we have little trouble concluding that this statutory language does not "hold[ ] an individual criminally responsible for conduct which he could not reasonably understand to be proscribed."

9

*Rose*, 423 U. S. at 49 (citation and punctuation omitted).

Looking at the statute as a whole, the evidence shows that Metz had the requisite fair warning that his conduct was prohibited as his conduct fell within the commonly understood meaning of the terms he challenges as vague: Metz was within the marked boundaries of a place "where inmates are . . . kept," and he continued to "stand" within the guard line after the officer ordered him to "desist." See *Bradford v. State*, 285 Ga. 1, 3 (2) (673 SE2d 201) (2009) ("when the phrase challenged as vague has a commonly understood meaning, then it is sufficiently definite to satisfy due process requirements" (citation and punctuation omitted)). OCGA § 42-5-17 proscribed Metz's conduct, and "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U. S. 733, 756 (III) (94 SCt 2547, 41 LE2d 439) (1974). Accordingly, this claim fails.

(b) Metz also argues that the statute permits arbitrary and discriminatory enforcement by law enforcement officers. In support of this claim, Metz focuses on the same statutory language discussed

above, arguing that it provides insufficient guidelines for law enforcement officers to determine what behavior constitutes "loaf[ing], linger[ing], or stand[ing] around," when to issue an order to "desist," and what constitute the precise boundaries of a location "where inmates are . . . kept." Again, we disagree.

As we have recognized, "[a] criminal statute perishes on constitutional grounds when it leaves speculative the tests for ascertaining the line separating guilty from innocent acts." *Johnson v. Athens-Clarke County*, 272 Ga. 384, 388 (3) (529 SE2d 613) (2000) (citation and punctuation omitted). "If arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis." *Bullock v. City of Dallas*, 248 Ga. 164, 166 (2) (281 SE2d 613) (1981) (citation and punctuation omitted). Of course, a law is not unconstitutionally vague simply because it lacks "mathematical certainty." *Grayned v. City of Rockford*, 408 U. S. 104, 110 (II) (A) (92 SCt 2294, 33 LE2d 222)

11

(1972). Indeed, the Constitution does not demand "perfect clarity and precise guidance." *Holder v. Humanitarian Law Project*, 561 U. S. 1, 19 (IV) (130 SCt 2705, 177 LE2d 355) (2010) (citation and punctuation omitted).

Because Metz has raised an as-applied challenge, we only consider whether the statute provides sufficient standards for its enforcement by officers when dealing with individuals who "stand around where inmates are . . . kept" and refuse to "desist." See *Smallwood*, 310 Ga. at 450 (2) ("[E]ven if the outermost boundaries of the applicable statute may be imprecise in certain situations, we need not make that determination as [appellant's] conduct clearly falls within . . . the statute's pr[o]scriptions[.]" (citation and punctuation omitted)). In this regard, there can be little argument that the statute sufficiently delineates the offense such that officers are apprised of what is proscribed. As discussed in Division 1 (a), the terms "stand" and "desist" have commonly understood meanings, which belies Metz's complaints about the statute's purported lack of enforcement standards. That officers are afforded some discretion in

deciding whether to issue an order to "desist" when a person is "stand[ing] around" does not render the statute constitutionally impermissible. Indeed, enforcing criminal laws necessarily "requires the exercise of some degree of police judgment," and a valid statute may be "marked by flexibility and reasonable breadth, rather than meticulous specificity." *Grayned*, 408 U. S. at 110, 114 (II) (A) (citation and punctuation omitted). And although Metz argues the phrase "where inmates are . . . kept" does not define a specific boundary such that the statute fails to provide officers with sufficient standards for enforcement, for the reasons discussed in Division 1 (a) we have little trouble concluding that the area within a guard line at a correctional institution is "where inmates are . . . kept." See also OCGA § 42-4-13 (j) ("Perimeter guard lines shall be established at every jail by the jailer thereof. . . . Signs shall also be placed at all *entrances and exits* for vehicles and pedestrians at the jail and at such intervals along the guard lines as will reasonably place *all persons* approaching the guard lines on notice of the *location of the jail*.") (emphasis supplied). Simply put, OCGA § 42-5-

17 as applied to the facts of this case defines standards sufficient for

enforcement without arbitrariness, and Metz's claim on this point

fails.[5]

---

[5] In arguing that OCGA § 42-5-17 is unconstitutionally vague as-applied, Metz points to two cases in which statutes criminalizing loitering have been held void for vagueness, *Papachristou v. City of Jacksonville*, 405 U. S. 156 (92 SCt 839, 31 LE2d 110) (1972), and *City of Chicago v. Morales*, 527 U. S. 41 (119 SCt 1849, 144 LE2d 67) (1999). However, Metz fails to appreciate the stark differences between OCGA § 42-5-17 as applied to his actions and the statutes at issue in those cases. The statute at issue in *Papachristou* provided:

> Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children shall be deemed vagrants and, upon conviction in the Municipal Court shall be punished as provided for Class D offenses.

*Papachristou*, 405 U. S. at 156 n.1 (citation and punctuation omitted). The *Papachristou* Court held that the statute failed to give a person of ordinary intelligence fair notice that his contemplated conduct was forbidden because "these activities are historically part of the amenities of life as we . . . know[ ] them," and the "net cast is large" as to encourage "arbitrary and erratic arrests and convictions[.]" Id. at 162, 164-165, 170. In *Morales*, the statute at issue provided:

> Whenever a police officer observes a person whom he reasonably believes to be a criminal street gang member loitering in *any public place* with one or more other persons, he shall order all such persons to disperse and remove themselves from the area. Any

14

2. Metz also contends the trial court erred by rejecting his proposed jury instruction that the exercise of First Amendment rights is a defense to prosecution. We conclude that Metz has not carried his burden of proving that the trial court abused its discretion in denying the requested instruction.

During the charge conference, Metz requested the following jury instruction:

> The fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed . . . when the person's conduct is justified for any other reason specified under the laws of this state[.] The Constitution of the State of Georgia provides that "no law shall be passed to curtail or restrain the freedom . . . of the press." The First

---

person who does not promptly obey such an order is in violation of this section.

*Morales*, 527 U. S. at 47 (I) n.2 (citation and punctuation omitted; emphasis supplied). The *Morales* Court emphasized that "[i]n *any public place in the city of Chicago*, persons who stand or sit in the company of a gang member may be ordered to disperse," and "[t]he mandatory language in the enactment directs the police to issue an order without first making any inquiry about their possible purposes." Id. at 60 (V) (emphasis supplied). Because of this, the ordinance afforded "too much discretion to the police and too little notice to citizens who wish to use the public streets." Id. at 64 (VI). The statutes in both *Papachristou* and *Morales* could be enforced on citizens simply for standing around in any public place. In contrast, OCGA § 42-5-17, as applied to Metz, was enforced after a warning, and Metz continued to stand within the demarcated guard line at a secure correctional institution. As such, *Papachristou* and *Morales* are distinguishable and not applicable here.

15

Amendment to the Constitution of the United States provides that Congress shall make no law abridging the freedom of the press. The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest, subject to reasonable time, place and manner restrictions. *Smith v. City of Cumming*, 212 F3d 1332 (11th Cir. 2000).

The trial court declined to give this charge, observing that the case law Metz cited in support of his proposed charge was inapposite. After the trial court charged the jury, Metz restated his objection to the omission of his proposed instruction and thus preserved this claim for ordinary appellate review. See *Jivens v. State*, 317 Ga. 859, 861 (1) (896 SE2d 516) (2023) ("[T]o preserve an objection to a jury charge for ordinary appellate review, the defendant must restate his objection after the court gives its instructions and before the jury retires to deliberate."). As such, we review the trial court's refusal to give Metz's requested jury instruction for abuse of discretion. See *Jackson v. State*, 311 Ga. 626, 633 (4) (859 SE2d 46) (2021).

As we have explained, "[a] request to charge must be legal, apt, and precisely adjusted to some principle involved in the case and be

16

authorized by the evidence." *Styles v. State*, 309 Ga. 463, 468 (2) (847 SE2d 325) (2020) (citation and punctuation omitted). "If any portion of the request to charge fails in these requirements, denial of the request is proper." *Grant v. State*, 295 Ga. 126, 131 (5) (b) (757 SE2d 831) (2014) (citation and punctuation omitted). Here, the proposed charge cited to *Smith* for the proposition that "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest, subject to reasonable time, place and manner restrictions." *Smith*, 212 F3d at 1332. But this instruction was not "precisely adjusted" to the legal principles involved in the case in that it did not take into account that a correctional institution, although public property in the sense that it is government-owned, is a nonpublic forum.[6] And the Eleventh

---

[6] "Generally speaking, our cases recognize three types of government-controlled spaces: traditional public forums, designated public forums, and nonpublic forums." *Minnesota Voters Alliance v. Mansky*, 585 U. S. 1, 11 (II) (138 SCt 1876, 201 LE2d 201) (2018). A nonpublic forum, although it is "public property," is "not by tradition or designation a forum for public communication[.]" *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U. S.

Circuit has *specifically* held that, since *Smith* did not involve a

nonpublic forum,[7] the First Amendment right it recognized does not

37, 46 (III) (A) (103 SCt 948, 74 LE2d 794) (1983). "In addition to time, place, and manner regulations, the state may reserve the [nonpublic] forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Id. And, a government-owned correctional facility is a nonpublic forum for First Amendment purposes. See *Gay Lesbian Bisexual Alliance v. Pryor*, 110 F3d 1543, 1548 (IV) (B) (2) (11th Cir. 1997) ("Nonpublic forums are areas that are not traditionally public forums and that the government has not opened for public use. For example, military bases and prisons are nonpublic forums."); *McDonough v. Garcia*, 116 F4th 1319, 1328 (III) (11th Cir. 2024) (nonpublic forums include "military bases[ ] or jails").

[7] In *Smith*, the plaintiffs were prevented from videotaping police actions in violation of their First Amendment rights. *Smith*, 212 F3d at 1332. But *Smith* makes no mention that the encounter between the plaintiffs and officers took place at a nonpublic forum. And, since *Smith*, the Eleventh Circuit has acknowledged that "*Smith*'s declaration of a right to record police conduct came without much explanation; . . . our opinion provided few details regarding the facts of the case, making it difficult to determine the context of the First Amendment right it recognized." *Crocker v. Beatty*, 995 F3d 1232, 1241 (II) (B) (1) (11th Cir. 2021) (citation and punctuation omitted). But "*Smith*'s reference to reasonable time, manner and place restrictions . . . calls to mind either a traditional public forum . . . or a designated public forum." Id. at 1242 (II) (B) (1) (citation and punctuation omitted). "*Smith*'s allusion to these [time, place, and manner] restrictions indicates that the plaintiffs there attempted to film police activity while in a public forum of some sort—*Smith* would seem to be a First Amendment anomaly otherwise." Id. The *Crocker* court acknowledged that

> time, place, and manner restrictions can be imposed in places other than public forums. . . . But what makes *Smith*'s reference to those restrictions telling is that the Court there said that *only* those restrictions could be imposed on the right that it announced. We know that in nonpublic forums, "the government has much more flexibility to craft rules limiting speech." [*Mansky*, 585 U. S. at 11-

18

apply to nonpublic forums. See *Watkins v. Fort Lauderdale Police Officer*, __ F4th __ (III) (A) (11th Cir. 2025) (post office parking lot where defendant was recording was a nonpublic forum and *Smith* "cannot clearly establish the law for a nonpublic forum" since *Smith* "referred to traditional public forums or designated public forums"); *Crocker v. Beatty*, 995 F3d 1232, 1240-1243 (II) (B) (1) (11th Cir. 2021) (property where defendant was recording was not "a public forum of any stripe" and thus *Smith* did not apply since plaintiffs in *Smith* "attempted to film police activity while in a public forum"); *Hoffman v. Delgado*, ___ F4th __ (III) (A) (11th Cir. 2025) (holding that appellant "fail[ed] to state a claim that the city violated his

12 (II)]. . . . So, given that *Smith* said that the only possible restrictions on the right that it recognized were time, place, and manner restrictions, one can reasonably infer that the *Court there recognized a right to record police conduct in public forums.*
Id. at 1242 (II) (B) (1) n.7 (emphasis supplied). See also *Watkins v. Fort Lauderdale Police Officer*, __ F4th __ (III) (A) (11th Cir. 2025) ("In *Crocker*, we clarified the outer boundary of *Smith*'s broad holding[.] . . . *Smith*'s declaration of a right to record police conduct came without much explanation. And because *Smith* provided few details regarding the facts of the case, that made it difficult to determine the context of the First Amendment right it recognized. We held that *Smith*'s reference to reasonable time, manner and place restrictions *referred to traditional public forums or designated public forums.*" (citations and punctuation omitted; emphasis supplied)).

First Amendment rights by prohibiting him from recording in the police department lobby," as the First Amendment right recognized in *Smith* was inapplicable to the facts since a police department lobby is neither a traditional public forum or designated public forum). As such, the trial court did not abuse its discretion in denying a proposed jury instruction that relied on law inapplicable to the facts of the case, posing the risk of misleading or confusing the jury.

*Judgment affirmed. Peterson, CJ, Warren, PJ, and Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ, concur.*

Decided May 6, 2025.

OCGA § 42-5-17; constitutional question. Paulding Superior Court. Before Judge Lyles.

*Allen R. Knox*, for appellant.

*Robert S. Lane, District Attorney, A. Brett Williams, Megan S. Torok, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Clint C. Malcolm, Senior Assistant Attorneys General*, for appellee.