No. 78.—ROBERT CRAIG *et al.*, plaintiffs in error, *vs.* JOHN W. MALTBIE, Sheriff, defendant in error.

Where a former sheriff is in custody under attachment, and the present sheriff, in answer to a rule to produce the body, shows for cause why he cannot, that the defendant has escaped from jail, without his permission or any negligence on his part, it is competent for the party moving—under the act of 1840, authorizing the return of sheriffs, constables, coroners, and justices of the peace to be traversed—to controvert the return.

If it is admitted to be true, or found so by a jury, upon an issue submitted for that purpose, that the sheriff suffered a prisoner in custody, under attachment, to go at large in the jail, with a full knowledge that there was a breach in the wall of one of the rooms, through which the defendant *could* and *did* escape—the sheriff is liable to *an attachment*, and the party injured will not be driven to his action for an escape.

For the facts of this case, and the grounds of error, see the opinion of the Supreme Court, delivered by his honor, Judge LUMPKIN.

N. L. HUTCHINS, H. and T. R. R. COBB, and —— PEEPLES, for the plaintiffs in error, submitted the following points:

1st. That the sheriff is liable by rule and attachment, for the escape of a prisoner under final process, unless such escape is effected by the act of God, or the public enemies of the country; and relied on the following authorities:—1 *Archbold's Practice*, ——; 1 *Sellon's Practice*, 206; 1 *Wheaton's Selwyn*, 456; *Hotchkiss*, 516, 518; 1 *Bingh.* 156, 423; 15 *Johns.Rep.* 155.

2d. That the return or showing of the sheriff is traversable, and the party requiring the return has the right to traverse the truth of such return, and cited the following authority:—*Hotchkiss*, 527.

JUNIUS HILLYER and JOHN R. ALEXANDER, for the defendant in error.

*By the Court*—LUMPKIN, Judge.

At March term, 1846, of the Superior Court of Gwinnett county, a rule absolute was granted against Nelson Roberts, late Sheriff, requiring him to pay over the sum of four hundred and twenty-six dollars, to the clerk of said court, and certain plaintiffs therein named, as costs collected by him, in their behalf, on divers *fi. fas.* set forth in said rule. Roberts failing to comply with this order was, on the 23d day of June thereafter, committed, under process of attachment, in the name of the State, to the common jail of the county, by John W. Maltbie, the present Sheriff.

At the September term, 1846, Maltbie was called on to return said attachment into court with his actings and doings thereon, together with the body of the said Roberts.

He returned: That he had taken Roberts into custody, and confined him in the county jail, and that, on the night of the 15th of August, he had escaped therefrom, without his permission and by no negligence on his part or on the part of the jailor.

The clerk and plaintiffs in execution proposed to controvert the return, and to prove that the sheriff suffered Roberts to go at large in all the rooms of the prison, with a full knowledge that there was a breach in the walls of one of them, through which the said Roberts could and did escape.

Maltbie refused to join issue on said statements, and denied the right of the party to traverse his return; and this objection was sustained by the court.

It was then urged that the sheriff was liable by rule, on his own showing, for the amount due on the attachment. But the court held otherwise—Judge Dougherty presiding. And further, that it was unnecessary to form the issue, as, in his opinion, the allegation on the part of the clerk and plaintiffs, suggests *new facts*, which, if true, make a case where the parties ought to be turned over to their remedy by action, for an escape, and not make the sheriff responsible by rule for a contempt of the court. Whereupon the clerk and plaintiffs in execution excepted, and contend that the judgment below ought to be reversed.

1st. Because the court determined that the parties in interest had no right to controvert the return of the sheriff, and refused to permit them to do so.

2d. Because the court decided that Maltbie, the sheriff, was not liable, under the rule, and upon the showing made by him.

3d. Because the court held that, admitting the facts suggested in the issue tendered to be true, the parties' remedy was by action for an escape, and not by attachment.

1st. Is the return of the sheriff traversable? The act of 1840 is exceedingly broad. It declares that: "Whenever any sheriff, constable, coroner, or justice of the peace, shall make a return, or showing, under, or by virtue of, any rule, or order, of any judge of any superior court of this State, the same shall be made on oath, to be taken at the time of making such return or showing; *and the party calling for such return or showing, shall be at liberty to traverse the truth of such return or*
35

*showing, and upon such traverse an issue shall be formed, and tried by the jury, as in the case of other traverses."—Hotchkiss,* 527.

This statute needs no comment. It applies to *every* return or show-ing made by *any* sheriff, under, or by virtue of, *any* rule, or order of *any* judge of *any* superior court of this State, and secures to the party calling for such return or showing, the right to traverse the truth there-of. If this act, therefore, is valid, the decision below is unquestionably wrong, for they are in direct conflict with each other.

The only objection raised to the law is, that it is supposed to inter-fere with that provision of our State constitution which declares, *that trial by jury as heretofore used in this State, shall remain inviolate.* Far be it from us to wish to curtail or abridge the right of trial by jury, be-lieving, as we do, with the great commentator on the common law : that the more it is searched into and understood, the more it is sure to be valued. And with the Virginia bill of rights : that in controversies re-specting property, and in suits between man and man, the ancient trial by jury is preferable to any other, and ought to be held sacred. That provision in *Magna Charta,* that no freeman shall be hurt in either his person or property, " *nisi per legale judicium parium suorum ,*" but by lawful judgment of his peers, deserves to be written in letters of gold ; and is justly esteemed an inestimable privilege in all civilized coun-tries. Of so high and beneficial a nature is this right that the 7th ar-ticle of the amendments to the Constitution of the United States en-acts : " That in suits at common law, where the value in controversy shall exceed twenty dollars, *the right of trial by jury shall be preserved,* and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law." And in the second section of the 3d article of the original instrument it is declared, that " the trial of all crimes, except in cases of im-peachment, *shall be* by jury."

With these great fundamental provisions staring him in the face—guarding and protecting this principal bulwark of English and Ameri-can liberties—that judge must be endowed with no ordinary degree of hardihood, who would disregard—much less seek to infringe—the right of trial by jury. In maintaining, however, the constitutionality and ex-pediency of the act of 1840, we repudiate any such imputation. On the contrary, it expressly guaranties this right ; and while, by the rules of practice, no appeal is allowed in collateral issues, still the court has the power, in its discretion, to grant new trials *toties quoties,* upon such terms as shall appear just and reasonable. The constitution of 1798 does not say, that all cases, in which the right of trial by jury exists, shall be commenced by petition and process, as ordinary suits are, and that six months shall intervene between the docketing and the trial term, and that there shall be *first* a trial before a petit, and then a special jury. If this were so, then would all of our railroad charters be void ; for they only allow to the landholder an appeal to a special jury, from the assessment of the commissioners ; when, before and since the adoption of the constitution, he was entitled to institute his action of trespass or ejectment against all intruders, in the usual way. I am fully persuaded that a rule of construction, fraught with the mischiev-ous consequences attendant on that contended for, never can be right.

And while it is a clear position, that if a legislative act oppugns a constitutional principle, the former must give way, and that in every such case it will be the duty of the court to declare the statute null, on the score of repugnance. Still, before the court bill be justifiable in doing this, the opposition between the constitution and the law must be plain and palpable. And such, we humbly conceive, is not true in the present case.

2d. We are rather inclined to maintain the correctness of the judge's charge, upon the second assignment; and to hold that Maltbie was not liable to an attachment, upon the showing made by him—that Roberts, the former sheriff, escaped from custody, without his permission, and without any negligence on his part.

3d. The next and only remaining question is : whether, admitting the facts suggested in the issue tendered, to be true, the parties' remedy was not by action for an escape, and not by attachment. What are these facts ? *That the sheriff, Maltbie, permitted Roberts, who was in custody, under process of attachment, to go at large in all the rooms of the jail with a full knowledge that there was a breach in the walls of one of them, through which the said Roberts could and did escape.* The judge below suggested that these allegations presented *new facts.* We do not think so. They only deny the truth of the sheriff's return, and do more than the law required, by specifying wherein it was false. But the main inquiry is ; conceding them to be true, and to be so found by the verdict of the jury, upon the issue which was tendered, did it make such a case as would justify the court in granting an attachment ? We hold the affirmative of this proposition.

The judiciary of 1799 declares that the sheriff shall be liable either to an action on the case, or an attachment for contempt of court, *at the option of the party*, whenever it shall appear that he hath injured such party, either by *false returns*, or by neglecting to arrest the defendant, or to levy on his property, or to pay over to the plaintiff, or his attorney, the amount of any sales which shall be made under, or by virtue of, any execution, or any moneys collected by virtue thereof."— *Prince's Digest,* 431, sec. 50.

This statute alone, unsupported by anything else, would be conclusive upon the point : for if the facts tendered in the issue were true, Maltbie had certainly made a *false return*, to the injury of the party. Moreover, if the act subjects the sheriff to an attachment, for *not arresting* the *defendant*, or for *neglecting* to *levy* on *his property*, much more will it adjudge him amenable to that process, for willfully suffering the defendant to escape, when in his custody under an attachment.

But it will be found, we apprehend, that this enactment confers no new rights or remedies, but is declaratory only of the law, as it then stood. It is the duty of a sheriff, and of *every other officer*, to discharge with fidelity, and to the utmost of his ability, every obligation incumbent upon him. His conscience and oath of office bind him to this extent. If he is delinquent, he incurs a double liability, namely, to the State and to the party injured. With proceedings at the instance of the public, we have nothing to do in this investigation, except to remark that whenever a rule is moved for, an attachment being of a *quasi* criminal nature, it is in the name of the State. As to the redress of individuals for official default,

the doctrine and distinction—as laid down in Bacon and other elementary writers, and illustrated by the adjudicated cases in Westminster Hall and our own courts—seem to be this: where the sheriff has been willfully negligent, and obviously refuses to do his duty, the court, in the administration of summary justice, will punish by attachment. It is the duty of courts to see that no abuses are committed by their own officers, which are calculated to bring disgrace on the courts themselves. If a sheriff therefore refuse to serve a writ, or to do so unless paid an unreasonable gratuity from the plaintiff, or receive a bribe from the defendant, or give him notice to remove his person or effects, or in order to prevent the service of any writ, the court which awarded it may punish such offences in such manner as shall seem proper, by attachment.—*Hob.* 62, 264; *Noy,* 101; *F. M. B.* 38; *Finch,* 237; 1 *Bla. Rep.* 6.

If, however, there has been no circumstance of obstinacy or willful negligence, it seems not usual to proceed in this manner, but to leave the party to his ordinary remedy against the sheriff by action.

Can any one doubt for a moment under which of these heads the present case falls, when the prisoner is in custody of the sheriff, under process of attachment for contempt, and he, pretendingly confines him in a jail, *knowing* that there is a hole in the wall through which he could and did escape; and when, too, it is recollected, that he had the authority under the law to remove him to some safe jail in the adjoining counties? We are aware that much is left to the discretion of the courts in these cases: and *that* consideration has been pressed upon us with all the zeal which the occasion demanded. ' Under the act creating this court, however, we cannot hesitate to control that discretion, whenever in our opinion it has been illegally and improperly exercised.

In this State, under the act of 1840, there is really no excuse for turning over parties to their remedies at law. If the facts admitted in the return are plain, the court will proceed at once to judgment; if they are intricate and difficult, or disputed, an issue is formed and submitted to a jury, when an opportunity is afforded of fully investigating all the facts and circumstances agreeably to the rules of law, and where each party will have justice meted out to them by the country. If the finding is for the officer, the motion against him will of course be arrested. If against him, he is then called on to comply with the order of the court, or be guilty of a contempt for disobedience to its pronounced judgment, for which an attachment will lie.

An attachment sued out against the sheriff is carried to the coroner, who ought duly to return the same, and pay the plaintiff his debt and costs; *but* if the *coroner does not return an attachment of contempt against the sheriff, the way to compel a return is to move for an attachment against the coroner, directed to elisors.* The coroner of Middlesex not having returned an attachment of contempt against the sheriff, the court granted a peremptory rule (in the first instance) for an attachment against the coroner, directed to elisors, pursuant to the precedent in *Andrews vs. Sharp, Black. Rep.* 911; *The King* vs. *Packham and Clarke,* 2 *Black Rep.* 1218. In *Ibbotson* vs. *Tindall,* 8 *Eng. Com. Law Rep.* 279, where the defendant was already in custody when the plaintiff's *capias* issued against him, and afterwards escaped, the court refused to set aside an attachment against the sheriff, for not bringing in the body, and to drive the

Craig et al. *vs.* Maltbie.

plaintiff to his action against the sheriff, which was moved for on the ground, *that the sheriff having taken no bail bond, ought not to be responsible summarily by attachment.* In this case a writ of *habeas corpus* issued out of the Court of Exchequer, directing the sheriff to have the body of the defendant before a judge at chambers for the purpose of showing cause why he should not be discharged on the extent in aid ; the jailor, or some other person deputed by him, accompanied the defendant for this purpose to *London, where he escaped without the knowledge, consent or participation of the sheriff or under-sheriff as it was averred in the under-sheriff's affidavit.* The plaintiff then ruled the sheriff to bring in the body. At *Michaelmas Term,* Vaughan, sergt., obtained a rule *nisi* calling upon the plaintiff to show cause why the sheriff should not be at liberty to amend his return on the writ of *capias,* by striking out the return on the writ, and returning according to the fact, " that on the receipt of the writ of the sheriff, the defendant was in custody at the suit of other persons ; and from thence, until and at the return of the writ, at the suit of other persons than the plaintiff; but the court, upon cause shown, thinking the first return substantially correct, and that the amendment was only prayed with a view to exonerate the sheriff, discharged the rule. The plaintiff having then sued out an attachment against the sheriff for not bringing in the body, Vaughan, sergt., obtained a rule *nisi* to set aside the attachment, on the ground that the *sheriff was innocent* of *this escape,* and that at all events, he ought not to be responsible, because the defendant, being in custody when the plaintiff's *capias* issued, the sheriff could take no bail bond for his security ; but if the attachment were set aside, the plaintiff might bring his action against the sheriff for the escape, in which case the amount of the damages might be inquired into, and the sheriff be thereby enabled to have his remedy even against the jailor in case a verdict should be obtained against him. *But the court thought that no ground had been shown for thus interposing in his favor, and discharged the rule.*

Here it will be perceived, that the prisoner was removed to *London* under a writ of *habeas corpus,* and that while there, he escaped, *without* the *knowledge, consent* or *participation of the sheriff* or *under-sheriff,* still the court refused to dismiss the rule for an attachment, and leave the party to his action ; whereas, in the case under discussion, it was proposed to prove, that the prisoner escaped by the willful neglect of the officer. Indeed, so far as his legal liability was concerned, he might just as well have left the jail-door open. Public policy forbids that the laws of the land should be relaxed in favor of sheriffs and other ministerial officers. If they are prompt and punctual in the performance of the duty required of them, they have nothing to fear. If, on the other hand, they willfully and designedly offend against the laws of the country, and the process of the court, they cannot complain of being visited with the appropriate penalties.

The judgment below must therefore be reversed ; and this is the unanimous opinion of the court.